IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

MIKI COOK, )
)
    Plaintiff, )
)
v. ) CV-96-PT-0554-M
)
GADSDEN STATE COMMUNITY )
COLLEGE and DAVID TIPTON, )
)
    Defendants. )

## MEMORANDUM OPINION

This cause comes on to be heard on the defendant's Motion for Summary Judgment filed on February 18, 1997. The plaintiff has alleged that the defendant unlawfully discriminated against her because of her gender in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*, as amended by the Civil Rights Act of 1991. The plaintiff also asserts a state law invasion of privacy claim against the individual defendant under the court's supplemental jurisdiction.

### BACKGROUND & CONTENTIONS

This case is purportedly a hostile environment sexual discrimination case. Miki Cook (Cook) is an instructor at Gadsden State Community College (GSCC), a public, postsecondary educational institution in Alabama. She has worked in different capacities at GSCC since 1977. David Tipton was Cook's supervisor from September 1985 until August 1994 when Victor Ficker, president of GSCC, recommended removing Tipton from his supervisory position.[1]

---

[1] According to a memo from Ficker to the Chancellor of the Department of Postsecondary Education, Ficker proposed moving Tipton to a full-time teaching job with no reduction in pay. Ficker cited incidents of insubordination by Tipton and stated: "There is considerable discontent in the area resulting from what appears to be a lack of professionalism and objectivity on the part of Dr. Tipton in his dealings with the faculty, especially on class schedules and instructor assignments. There is almost a total lack of communication between some faculty members and Dr. Tipton."

Cook contends that Tipton has harassed, intimidated, and discriminated against her in her teaching schedule. Specifically, she claims that she did not receive four summer teaching contracts because of Tipton's discrimination. She alleges that Tipton was even required to change one or two of her evaluations because they were unfair. She further claims that Tipton called her paranoid, delusional, irrational, and out-of-contact with reality. She also alleges that Tipton said, "If you would be nice to me, I would quit harassing you." Despite her complaints, she contends, GSCC has forced her to work in a hostile environment for several years.

GSCC denies that Cook suffered sexual harassment. GSCC claims that it follows a uniform and standard seniority policy in deciding who receives summer contracts. Individual supervisors, the school claims, have no discretion in awarding these contracts. GSCC admits that Tipton was often irritated at Cook but denies that he acted sexually toward her.

### LEGAL STANDARD

On a motion for summary judgment, the court must assess the proof to see whether a genuine need for trial exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In making the determination of whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

Considering the above, this court must examine the evidence to decide if a genuine issue of material fact exists.

## ANALYSIS
## Hostile Work Environment

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's . . . sex . . . . 42 U.S.C. § 2000e-2(a)(1). In Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S. Ct. 367 (1993), the United States Supreme Court addressed the definition of a discriminatorily abusive or hostile work environment. The Court reaffirmed the prevailing standard by holding:

> When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.

Harris, 510 U.S. at 21, 114 S. Ct. at 370.[2]

The Court clarified this imprecise standard by adding that a mere utterance of an offensive epithet that offends an employee does not sufficiently affect the conditions of employment to implicate Title VII. Id. Further, conduct must be severe and pervasive

---

[2] "Hostile environment sexual harassment occurs when an employer's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1315 (11th Cir. 1989).

enough, viewed under all the circumstances, to create an objectively hostile or abusive work environment. Id. at 21-23, 114 S. Ct. at 370-71. Relevant circumstances may include the purported conduct's frequency and severity; whether it is physically threatening or humiliating {or a mere offensive utterance}; and whether it unreasonably interferes with an employee's work performance. Id. at 23, 114 S. Ct. at 371.

To establish a prima facie case of a sexually hostile work environment, Cook must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment affected a term, condition, or privilege or employment; and (5) respondeat superior liability. Henson v. Dundee, 682 F.2d 897, 903-05 (11th Cir. 1982).

The court concludes that Cook cannot establish her prima facie case because she has not shown that she was subjected to unwelcome harassment that was *based on her sex* -- the essence of a Title VII claim. Cook's evidence shows that she had a "personality conflict" with Tipton. Apparently, one other female but no male faculty members had similar difficulties with Tipton. Cook's evidence also shows that Tipton believed Cook was "crazy" and often told her colleagues that she was "paranoid," "delusional," "irrational," and "out-of-contact with reality."[3] Tipton testified, moreover, that he changed portions of Cook's reviews because at least one might have been unfair. Further, Tipton allegedly said that he would quit harassing her if she would be nice to him.[4] The court concludes that this evidence is highly probative of a personnel dispute between Cook and Tipton but is not significantly probative of sexual discrimination.

Cook attempts to connect her conflict with Tipton to sexual harassment by arguing that Tipton did not treat male faculty similarly.[5] Such disparate treatment, she contends, establishes that Tipton's discrimination was based on sex. Cook's rationale oversimplifies Title VII and is thus flawed. A Title VII plaintiff's burden is to show that but/for the fact that

---

[3] The court views the evidence in a light most favorable to the plaintiff.

[4] Such isolated remarks are insufficient to establish a hostile environment based on sex.

[5] The record at least establishes that no male faculty member complained about Tipton.

she is female her supervisor would not have harassed her. Otherwise, a female employee could successfully assert a Title VII claim whenever she had a mere personnel dispute with a male supervisor. Plaintiff must, and has not, demonstrate that male faculty members under the same or similar circumstances were treated differently and she was in a severe, hostile environment based on her sex.

Cook seeks to bolster her argument by contending that the lack of evidence of sexual advances or sexual overtures stemming from the purportedly abusive environment at GSCC is irrelevant to her Title VII claim (citing Cronin v. United Service Station, Inc., 809 F. Supp. 922 (M.D. Ala. 1992). This erroneous contention follows from a common practice in which litigants cite and rely on out-of-context quotations as authority. In Cronin, a female convenience store manager claimed that her assistant manager sexually harassed her and created a sexually hostile work environment. The evidence showed that the harasser put his arms around her waist, touched her neck and shoulders, moved his hands down to her waist, sang in her ear, referred to his private areas, asked her out on dates, stated that he wanted a "good feel," called her a "dumb, old stupid woman," stated that women could not handle management, undermined her orders and authority to the employees, and eventually threatened her with physical harm. In its analysis, the court first concentrated on the evidence that had sexual implications. The court went on to conclude:

> The court has thus far focused on harassment which has sexual overtones. However, to be actionable under Title VII, the conduct giving rise to a hostile or offensive work environment need not consist of sexual advances or have clear sexual overtones. For example, conduct of a nonsexual nature that ridicules women or treats them as inferior can constitute prohibited sexual harassment. Threatening and bellicose conduct related to a person's sex can also be considered as sexual harassment.

Cronin, 809 F. Supp. at 929. The court concluded that the combination of sexual overtures, demeaning comments, and physical abuse created a sexually hostile work environment.

No evidence exists that Tipton ridiculed Cook or treated her inferior *because she is female*. Nor is there evidence that Tipton threatened Cook or was aggressive toward her *because she is female*. The record fails to establish, moreover, that Tipton harbored a general animosity toward female employees. The evidence shows instead that Tipton may have been

5

a harsh supervisor who apparently criticized Cook with gender neutral remarks. A mere personnel dispute, without more, however, is not actionable under Title VII. The defendant's motion will be granted on the Title VII claim.[6]

## 2. Invasion of Privacy

Since the court will dismiss all federal claims, it will not accept jurisdiction of the state law claim which is only supplemental. That claim will be dismissed without prejudice.

This 25 day of June, 1997

Robert B. Propst
Senior United States District Judge[7]

---

[6] Even assuming that Cook had established a hostile environment claim, GSCC took appropriate remedial action. See note 1.

[7] **This judge prepared and signed this opinion several weeks ago and recalls it. He cannot explain why it did not get docketed.**

6